UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALENA CLARK,

    Plaintiff,

v.

COUNTY OF SAGINAW,
et al.,

    Defendants.
_____/

Case No. 19-CV-10106
Honorable Thomas L. Ludington

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

On January 11, 2019, Plaintiff, Alena Clark, a former Assistant Prosecuting Attorney ("APA") for Saginaw County filed a complaint against Defendants John McColgan, the elected Prosecutor for Saginaw County, Chris Boyd, a former APA, the Saginaw County Prosecutor's Office, and the County of Saginaw. Plaintiff alleged in Count I that all Defendants violated the Michigan Elliot-Larsen Civil Rights Act because "gender was at least one factor that made a difference in Defendants' decision to pay Plaintiff less, terminate Plaintiff, and treat her differently than similarly situated male employees." ECF No. 1 at PageID.6. In Count II she contended that all Defendants retaliated against her for "opposing violations of the Elliott-Larsen Act." *Id.* at PageID.7. Count III identifies a claim under 42 U.S.C. § 1983 and the First Amendment alleging Defendants McColgan and Boyd terminated her employment because of her "speaking out against gender discrimination." *Id.* at PageID.8–9. Count IV alleged a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment against McColgan and Boyd for treating her differently "than similarly situated APA's." *Id.* at PageID.9–10. Count V was brought against the County of Saginaw under the

Equal Pay Act alleging that she was promoted to the classification of APA II but was not "paid commensurate with the position, such as similarly situated male APA's." *Id.* at PageID.10–11.

On September 29, 2020, this Court entered an Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment, with only Count II remaining against Defendants McColgan and Boyd. ECF No. 97. On December 7, this Court granted in part Plaintiff's Motion to Amend the Opinion and Order and corrected a scrivener's error erroneously dismissing Saginaw County. ECF No. 26. Accordingly, only Count II remains against Defendants McColgan, Boyd, and the County of Saginaw.

On October 13, 2020 Defendants filed a Motion for Reconsideration. ECF No. 99. Plaintiff was requested to respond. ECF No. 102. The response was timely filed. ECF No. 104. Defendants filed an unsolicited reply a few days later. ECF No. 107. Plaintiff filed a Motion to Strike the reply and Defendants responded later that day. ECF Nos. 108, 109.

**I.**

As an initial matter, it is noted that Defendants were not granted leave to file their reply brief. Local Rule 7.1(h)(2) provides that "No response to the motion [for reconsideration] . . . [is] permitted unless the court orders otherwise." The Court determined that Plaintiff's response to Defendants' motion would be useful and directed a response. Authorizing Plaintiff to file a response did not authorize Defendants to file a reply without leave of Court. However, review of Defendants' reply brief is not prejudicial to Plaintiff and in the interest of full briefing on the issue at hand, it will be accepted. Plaintiff's Motion to Strike Defendants' Reply Brief is denied.

**II.**

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order within fourteen days. A motion for reconsideration will be

granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Mich. Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733–34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997)). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015). A full recitation of the facts can be found in this Court's previous Opinion and Order, ECF No. 97.

### III.

In their motion, Defendants explain,

> Defendants respectfully move for reconsideration of the Court's Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (ECF No. 97) pertaining to the denial of Defendants' motion as to Count II. The Opinion and Order contains a clear error of substantive law in the analysis of this Count. The Court's determination as to whether Defendants met their burden to articulate legitimate, non-retaliatory reasons for Plaintiff Clark's termination improperly exceeds that which can be demanded to satisfy a burden of production, requiring Defendants to introduce evidence which would persuade the trier of fact that the employment action was lawful. That is in clear contravention of legal precedent and constitutes a palpable defect the correction of which would result in the dismissal of Count II. Defendants met their burden of production to articulate legitimate, non-retaliatory reasons for Ms. Clark's termination, and to produce evidence thereof, and Plaintiff did not meet her burden of proving that these reasons were pretext for retaliation.

ECF No. 99 at PageID.2907.

### IV.

As explained in the Opinion and Order, little information was furnished in the parties' initial papers concerning the employment practices and procedures for the County of Saginaw or the Saginaw Prosecutor's Office. Indeed, the papers reflected inconsistent use of language addressing

employment terms and practices. That problem remains as little additional information has been furnished with the Motion for Reconsideration, the response, or the reply. For example, Mr. Kanuszewski, a former prosecutor, is a main focus of Defendants' Motion for Reconsideration. However, the Court is still unaware of Kanuszewski's job responsibilities, his tenure at the Saginaw County Prosecutor's Office, why he had a pending veterans preference hearing, his reasons for leaving employment, or the status of his case against Saginaw County. The only exhibit furnished to the Court (attached to a motion in limine) is a copy of Kanuszewski's amended complaint in his employment case. ECF No. 78-3. The Court is unaware of the status of Mr. Kanuszewski's case and despite being attached as an exhibit to a motion in limine, it is not referenced in the briefing for the Motion for Reconsideration.

## V.

Defendants accurately contend that under the *McDonnell Douglas* framework, "once a plaintiff has established a prima facie case of retaliation or discrimination, 'the burden [of production] shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [alleged adverse action.'" ECF No. 99 at PageID.2911 (quoting *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). An employer 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257. Defendants emphasize, again accurately, that the evidence does not have to "persuade the trier of fact that employment action was lawful." *Id.* And, it is only after the burden is placed back on the plaintiff that the plaintiff's burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Jackson v. VHS Detroit Receiving Hospital*, 814 F.3d 769, 779 (6th Cir. 2016) (quoting *Burdine*, 450 U.S. at 256).

As the Supreme Court has explained, "[t]he McDonnell Douglas division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to [the] ultimate question" of Plaintiff's burden. *Texas Department of Commercial Affairs v. Burdine*, 450 U.S. 248, 253 (1981). For the second step,

> [t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. . . . *Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.*

*Id.* at 254–56 (emphasis added). "[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Id.* at 258. The Sixth Circuit has determined, and this Court has held, that "poor performance is a legitimate non-discriminatory reason for [the defendant] to terminate [the plaintiff]." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 488 (6th Cir. 2011); *West v. Wilkie*, case number 17-14218 at ECF No. 33.

For the third step, pretext,

> [Plaintiff] now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine*, 450 U.S. at 256. "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *White v Baxter Healthcare Corp.*, 533 F3d 381, 392 (6th Cir. 2008).

"A plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F3d 381, 392–93 (6th Cir. 2008). Alternatively, the plaintiff may "offer[] evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Id.* (internal quotation and citation omitted).

### i.

Plaintiff Alena Clark was hired as an Assistant Prosecuting Attorney for the County of Saginaw on February 2, 2016. During her tenure, she had multiple immediate supervisors, including, Christopher Boyd, Mark Gaertner, and Blair Stevenson. Her employment was terminated on August 29, 2018. She testified that she was never disciplined for her work performance and received a severance payment reflecting that she was not terminated for cause.

### ii.

Defendants itemize three pages of what they characterize as "legitimate, non-retaliatory reasons for the employment action" in their Motion for Reconsideration. ECF No. 99 at PageID.2913–16. Most of the information duplicates the argument from the original motion but is included in the Motion for Reconsideration with greater emphasis. First, they argue Clark was "disloyal" to McColgan for communicating with Kanuszewski. Defendants cite to PageID.1599 in the record to support the assertion that Clark informed Kanuszewski that management was discussing his case. In fact, the relevant text message on that page states, "Chris is going through your desk right now. Thought you should know." ECF No. 62-20 at PageID.1599. However, if there is a legitimate business interest in limiting Clark's communication to Kanuszewski about "Chris

going through your desk," Defendants do not explain what it is. Other text messages included in the record, and cited at various times, reflect that Clark informed Kanuszewski that McColgan and other prosecutors were talking ("You know yesterday they had this long *ss meeting in marks office" "And the day before that Boyd was in there w [sic] him and I wondered if that was what they were talking about"). ECF No. 62-20 at PageID.1601 (redaction added). However, Defendants proffer no evidence that Clark knew anything about the topic of conversation, let alone that she shared details of the conversations with Kanuszewski. She later informed Kanuszewski that "[t]hey started interviews yesterday too I noticed." *Id.* at PageID.1605. However, again, there is no evidence of what the interviews were for, who was contacted, or what was discussed. More importantly, there is no evidence Clark was instructed to not share any information with Kanuszewski or to end her friendship with him. It is undisputed that Clark informed her not-yet-terminated coworker that their boss entered his office and that management was having meetings and conducting interviews, but Defendants do not explain how those comments violated the Prosecutor's Office's legitimate business interests.

### iii.

Second, Defendants argue "[i]t is undisputed that Clark's supervisors, Gaertner and Stevenson, advised McColgan of Clark's deteriorating attitude regarding the employment actions involving Kanuszewski." ECF No. 99 at PageID.2914–15. Third and similarly, Defendants highlight O'Berry's affidavit discussing Clark's continued behavior toward her, which she characterizes as "bullying." *Id.* The accusations about Clark's personality or attitude had been expressed by some employees before, but, equally important to the opinion, was not held by all employees.

Even if Clark's attitude and behavior are sufficient to meet the second prong of the McDonnell-Douglas test, Plaintiff still demonstrates a genuine question of material fact about

whether Defendants explanation is pretextual. That is, whether her behavior was the actual reason for her termination. Some complaints about her behavior and attitude had been expressed by some employees without discipline or any indication that her supervisors informed Plaintiff they were concerned about her behavior. Then, two weeks after Clark reports her belief about Boyd's gender discrimination to McColgan ("because I was a woman"), she was terminated. As discussed in this Court's original Opinion and Order and "viewing the record in the light most favorable to [Plaintiff],"[1] Defendants have not offered any reason to believe that their assessment of Clark's professional conduct warranted termination until after she met with McColgan to discuss her concerns about how she was treated by Boyd. Accordingly, Plaintiff has met her burden of proffering evidence that Clark's attitude and behavior were not the real reason for her termination.

**iv.**

Fourth, Defendants argue that McColgan was informed by Clark's supervisors that she "was distancing herself from fellow APAs, and was no longer following Stevenson's directives." *Id.* at PageID.2915–16. The primary evidence offered to demonstrate this assertion is Mr. Stevenson's affidavit which provided that "[s]he did not follow my directions regarding the assignment and processing of files." ECF No. 62-10 at PageID.1489. The only other evidence regarding Clark not following directives related to the Troy McClain case. However, Defendants in no uncertain terms explain in their Motion for Reconsideration that they "have never suggested that Clark's mishandling of the Troy McClain case was the basis for termination. It was offered to establish that Clark was not ready for promotion to APA II." ECF No. 99 at PageID.2909 n.1. Defendants' distinction is confusing. The evidence of Clark's involvement with the McClain file either is corroborative of her not following directions and therefore justifies termination or is not relevant to assessment of her gender discrimination claim. Regardless, the Court will accept Defendants' assertion that Clark's

---

[1] *White*, 533 F.3d at 394.

- 8 -

management of the McClain case was not a reason for her termination. Because the only specific evidence that Clark was not following Stevenson's directives was evidence from the McClain case, it does not demonstrate a legitimate reason for her termination, or, alternatively, that Clark's failure to follow her supervisor's directions was sufficient misconduct to justify her termination.

**v.**

Defendants further argue that "APAs are appointed by and serve 'during the pleasure of the prosecuting attorney.'" ECF No. 99 at PageID.2917–18. While it is true that the Prosecutors employees serve at the will of the elected prosecutor, that does not authorize an elected Prosecutor's termination of an employee in retaliation for reporting gender discrimination.

Finally, Defendants argue that because this Court held that Plaintiff's discussion with McColgan regarding Boyd's behavior at the Kanuszewski meeting was not a matter of public concern for purposes of assessing a First Amendment claim, that the same meeting cannot be considered "protected activity" for purposes of assessing the Elliott Larsen retaliation claim. ECF No. 99 at PageID.2921–22. However, Defendants do not explain how the analysis concerning what is a matter of "public concern" for the First Amendment equates to determining what is protected activity under Michigan's Elliott Larsen Act. Moreover, as earlier noted, Defendants did not challenge Plaintiff's contention that the meeting between herself and Defendant McColgan was protected activity under Michigan's Elliott Larsen Act in their Motion for Summary Judgment. *See* ECF No. 97 at PageID.2883. Defendants cannot now seek to raise the issue in their Motion for Reconsideration.

**VI.**

Accordingly, it is **ORDERED** that Plaintiff's Motion to Strike, ECF No. 108, is **DENIED**.

It is further **ORDERED** that Defendants' Motion for Reconsideration, ECF No. 99, is **DENIED**.

Dated: December 9, 2020                                          s/Thomas L. Ludington
                                                                 THOMAS L. LUDINGTON
                                                                 United States District Judge