UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALENA CLARK,

               Plaintiff,                          Case No. 1:19-cv-10106

v.                                       Honorable Thomas L. Ludington
                                           United States District Judge
COUNTY OF SAGINAW et al.,

               Defendants.

_____/

**OPINION AND ORDER RESOLVING 11 EVIDENTIARY MOTIONS, DIRECTING PLAINTIFF TO SUPPLEMENT WITNESS DISCLOSURE, AND DIRECTING PARTIES TO SUBMIT SUPPLEMENT BRIEFING**

The jury trial for this employment-discrimination and wrongful-termination case is scheduled for February 21, 2023. Plaintiff has filed seven evidentiary motions, and Defendants have filed four. All 11 motions will be addressed below, Plaintiff will be directed to supplement a witness disclosure to Defendants, and the parties will be directed to submit supplemental briefing on one evidentiary issue.

**I.**

**A.**

Plaintiff Alena Clark, a former assistant prosecuting attorney (APA) for Saginaw County, alleges that Defendants terminated her employment because she spoke out against gender discrimination.

She pleaded as follows: She was an APA with Saginaw County beginning in February of 2016. ECF No. 1 at PageID.3. Defendant Boyd was the Chief APA and Plaintiff's supervisor. *Id.* Defendant McColgan was the Saginaw County Prosecuting Attorney and Boyd's supervisor. *Id.* Boyd treated her worse than her male coworkers and would give "similarly situated male APAs"

better work assignments, like capital cases, which Plaintiff eventually complained about after Defendants reassigned a capital case previously assigned to her to a male employee. *Id.* Eventually, McColgan had to admonish Boyd not to "yell" at "female staff" after some workers had complained about his behavior toward women. ECF No. 1 at PageID.4. McColgan testified during his deposition that in 2015 Boyd verbally called out a former female APA named Janet Janetsky. ECF No. 65-4 at PageID.1818. Plaintiff also alleges that, on January 29, 2018, Defendants changed her employment classification to APA II without informing her but maintained her APA I compensation, even though some male APA IIs received the commensurate raise. ECF Nos. 1 at PageID.4; 62-4 at PageID.1457. Even after receiving APA II duties, she still did not receive the APA II raise. ECF No. 1 at PageID.4.

According to Defendants, they often changed employees' APA designations to reflect that a position was "occupied" so that it would not be eliminated. *See* ECF Nos. 62-3 at PageID.1454; 62-7 at PageID.1466. Indeed, McColgan and Boyd testified that they did the same thing for at least eight other employees. *See* ECF No. 62-5 at PageID.1459, 1460; 62-7 at PageID.1467; 65-11 at PageID.878; *see also* ECF Nos. 65-12 (illustrating Defendants' spreadsheet of employee designations); 117-2 at PageID.3215 (averring how Boyd and McColgan "reassigned" APA II designations to APA I employees in the HR system, thus, "preventing the County Board of Commissioners from eliminating" the APA II position or its allotted budget).

They also testified that they authorized APA II compensation for some of the APA I employees. *See* ECF No. 65-4 at PageID.1841–42. At this juncture, the only explanation that Defendants have provided for how or why they arrived at different APA classifications, assignments, and compensation is McColgan's testimony that they looked at "[c]ases tried, how [attorneys] handle their cases, amount of cases, [and] ab[ility] to function in the office without

drama." ECF No. 62-3 at PageID.1453. Those criteria are consistent with the discretion demonstrated in the Saginaw County Prosecuting Attorneys Collective Bargaining Agreement. *See, e.g.*, ECF No. 62-2 at PageID.1449 ("The Prosecuting Attorney has the sole authority to determine where each Employee shall be classified, limited to the number of assistant prosecuting attorneys budgeted in each classification . . . .").

Plaintiff also contends that during an August 14, 2018 meeting that Boyd held for all the APAs, he yelled at, belittled, and embarrassed her. ECF No. 1 at PageID.4. She adds that Boyd singled her out because of her gender, as he did not similarly mistreat two male APAs during the same meeting. ECF No. 65-2 at PageID.1773.

Immediately after the meeting, Plaintiff made a verbal complaint to human resources (HR), alleging Boyd discriminated against her "based on her gender." ECF No. 1 at PageID.5. The HR employee told Plaintiff to write-up her complaint. ECF No. 65 at PageID.1700.

That evening, she wrote a document summarizing the August 14, 2018 meeting, *see* ECF No. 62-22 at PageID.1647–48. She never gave the written complaint to Boyd or McColgan.

The next day, Plaintiff went to HR but did not submit the written complaint because she thought that gender discrimination was "a matter of public concern" and, therefore, wanted to inform McColgan first. ECF No. 1 at PageID.5. Instead, she told a second HR employee that Boyd discriminated against her based on her gender. ECF Nos. 62-23 at PageID.1665–66; 65 at PageID.1700; 65-2 at PageID.1777– 79.

After meeting with HR, Plaintiff met with McColgan. ECF No. 62-22 at PageID.1659. Plaintiff gave McColgan her oral and written complaint, and "McColgan agreed that gender discrimination in the workplace is matter of public concern, that employees have the legal right to report those concerns to him or HR in line with normal operations, and that reporting good faith

concerns is not evidence of disloyalty." ECF No. 65 at PageID.1701.

McColgan told Boyd about Plaintiff's gender-discrimination complaint, which Boyd "laughed . . . off as being insignificant because [he] was retiring." ECF No. 65-3 at PageID.1799.

Two weeks after Plaintiff reported Boyd to McColgan and HR, on August 29, 2018, Defendants terminated her employment. ECF No. 65 at PageID.1732. She testified that she never followed-up with HR because of the termination of her employment. ECF No. 65-2 at PageID.1775. But according to McColgan, Plaintiff "advised [him] that she was aware of Boyd's pending retirement and therefore did not want to pursue any form of complaint." ECF No. 62-19 at PageID.1590–91.

McColgan testified that he did not "think" he "decided to fire" Plaintiff until after she complained to him about Boyd's gender-discrimination. ECF No. 65-4 at PageID.1823.

**B.**

On January 11, 2019, Plaintiff filed a five-count complaint against Defendants Saginaw County Prosecutor John McColgan, former-APA Christopher Boyd, the Saginaw County Prosecutor's Office, and the County of Saginaw. ECF No. 1. In Count I, Plaintiff alleged that Defendants violated the Michigan's Elliot Larsen Civil Rights Act (ELCRA) because gender motivated their decisions to pay her less, to "treat her differently than similarly situated male employees," and to terminate her employment. *Id.* at PageID.6–7. In Count II, she contended that Defendants retaliated against her for "opposing violations of the [ELCRA]." *Id.* at PageID.7–8. Count III was a § 1983 action alleging that Defendants McColgan and Boyd violated the First Amendment by terminating her employment for "speaking out against gender discrimination." *Id.* at PageID.8–9. In Count IV, Plaintiff contended under § 1983 that McColgan and Boyd violated the Fourteenth Amendment by treating her differently than "similarly situated male APA's [sic]."

*Id.* at PageID.9–10. And Count V alleged that Saginaw County violated the Equal Pay Act, 29 U.S.C. § 206(d), by promoting Plaintiff to "APA II" without the commensurate pay given to similarly situated male APAs. *Id.* at PageID.10–11.

After nearly 17 months of contentious discovery, Defendant filed a motion for summary judgment. ECF No. 62.

In September 2020, Counts I, III, IV, and V were dismissed. ECF No. 97 at PageID.2892. Counts I and IV were dismissed because Plaintiff could not demonstrate that she qualified for an APA II promotion or that her sex was a but-for cause of Defendants not promoting her to APA II. *Id.* at PageID.2878–82. Count III was dismissed because Plaintiff's complaint to McColgan of Boyd's conduct was made "in the context of her employment as an APA" and not as a private citizen. *Id.* at PageID.2885–89. Count V was dismissed because Plaintiff did not provide "persuasive evidence that she was actually promoted to APA II during her employment" or that either all male APA Is or all male APA IIs were paid more than her. *See id.* at PageID.2889–91.

But Count II, brought under Michigan Compiled Laws § 37.2701(a), was left fully intact. *Id.* at PageID.2883–85. Plaintiff advanced sufficient facts to demonstrate that gender might be a "significant factor" in Defendants' decision to terminate her employment based on the close temporal proximity to her complaint to McColgan of Boyd's gender discrimination. *Id.* at PageID.2883–84. The burden then shifted to Defendants, who did not offer sufficient evidence of "a nondiscriminatory rationale for Plaintiff's termination." *Id.* at PageID.2885.

Defendants filed a motion for reconsideration, arguing that this Court's denial of summary judgment for Count II was "a palpable defect" because "Plaintiff did not meet her burden of proving that [Defendants'] reasons were pretext for retaliation." ECF No. 99 at PageID.2907.

Defendants' Motion for Reconsideration was denied because Plaintiff demonstrated "a

genuine question of material fact about whether Defendants' explanation [wa]s pretextual." *Clark v. Cnty. of Saginaw*, No. 1:19-CV-10106, 2020 WL 7240504, at *4 (E.D. Mich. Dec. 9, 2020). Although Defendants cited Plaintiff's purported bad behavior and attitude, that conduct had gone unaddressed until the termination of Plaintiff's employment. *Id.* Thus, drawing all reasonable inferences in Plaintiff's favor, Plaintiff successfully raised a question of fact about whether her prior performance was a pretext to terminate her employment. *See id.*

## C.

All that remains is Count II, contending that Defendants McClogan, Boyd, and County of Saginaw retaliated against Plaintiff for "opposing violations of the Elliott-Larsen Act."[1] *See* ECF Nos. 1 at PageID.7; 97. Those violations, she claims, are Boyd's repeated instances of hostile sexism against women, including his public beratement of Plaintiff on August 14, 2018.

The case is scheduled for trial on February 21, 2023. ECF No. 138. Meanwhile, 11 motions are pending:

> (1) Plaintiff's Motion in Limine to limit evidence relating to Michael Kanuszewski and to exclude irrelevant text messages between Plaintiff and Kanuszewski, ECF No. 78;
> (2) Plaintiff's Motion in Limine to exclude PCN staffing report, Clark clearance rate, Saginaw APA clearance rate, docket sheets, and excerpted materials from Wright and Young, ECF No. 79;
> (3) Plaintiff's Motion in Limine to exclude texts between Plaintiff and Sharonda Clement, ECF No. 80;
> (4) Plaintiff's Motion in Limine to exclude seven pieces of evidence, ECF No. 81;
> (5) Defendants' Motion in Limine to strike and preclude testimony of Dr. Yvonne Makidon, a clinical social worker, ECF No. 82;
> (6) Defendants' Motion in Limine to exclude unfounded allegations of gender discrimination, ECF No. 83;

---

[1] On September 29, 2020, this Court entered an Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment, retaining only Count II against Defendants McColgan and Boyd. ECF No. 97. On December 7, this Court granted in part Plaintiff's Motion to Amend the Opinion and Order and corrected a scrivener's error erroneously dismissing Saginaw County. ECF No. 110. Accordingly, only Count II remains against Defendants McColgan, Boyd, and the County of Saginaw.

(7) Defendants' Motion in Limine regarding prior litigation, ECF No. 84;
(8) Plaintiff's Motion to Strike Defendants' pretrial conference submissions, ECF No. 115;
(9) Defendants' Motion to Strike discussions of HR visit from Plaintiff's statement of claims, ECF No. 117;
(10) Plaintiff's Motion to Seal, ECF No. 131; and
(11) Plaintiff's Amended Motion in Limine to limit evidence relating to Michael Kanuszewski and exclude irrelevant text messages between Plaintiff and Kanuszewski, ECF No. 133.

Before addressing the parties' motions in limine, this Court will return to a subject addressed when assessing Defendants' Motion for Summary Judgment—the absence of the routine HR policies and procedures ordinarily found in employment-discrimination cases. *Clark v. Cnty. of Saginaw*, No. 19-10106, 2020 WL 5801188, at *3 (E.D. Mich. Sept. 29, 2020) ("[T]he only document relating to the employment practices of the Saginaw County Prosecutors office [or Saginaw County in general] furnished to the Court is the Collective Bargaining Agreement ('CBA')."); *accord Clark v. Cnty. of Saginaw*, No. 19-CV-10106, 2020 WL 7240504, at *2 (E.D. Mich. Dec. 9, 2020).

The absence might be partly attributable to the "co-employer" status of counties and prosecuting attorneys under Michigan law, which is memorialized in the CBA. *See* ECF No. 62-2 at PageID.1445–50 ("The County and the Prosecuting Attorney as Co-Employers will retain, all rights responsibilities and prerogatives normally exercised by employers in the past subject only to such restrictions as are expressly provided for in this Agreement."). Under this regime, the County Board of Supervisors determines the number of assistant prosecuting attorneys that the prosecuting attorney may appoint. MICH. COMP. LAWS § 49.31. To that end, the prosecuting attorney appoints one chief assistant in addition to "all other prosecuting attorneys in the order in which they shall rank." MICH. COMP. LAWS § 49.33.

Most counties in Michigan, including Saginaw County, maintain an HR office that

presumably implements the types of policies and procedures that normally govern the employment relationship. *E.g.*, *Miller-Webb v. Genesee Cnty.*, No. 325593, 2016 WL 1579016, at *1 (Mich. Ct. App. Apr. 19, 2016) (per curiam) (unpublished) (discussing "Genesee County's Personnel Policy Manual"); *see also Kruzich v. Chevron Corp.*, No. C-11-4488 EMC, 2011 WL 6012959, at *1 (N.D. Cal. Dec. 1, 2011) ("HR Policy 344 lists examples of legally protected rights, including: (1) claims for discrimination, retaliation, or harassment . . . .").

Yet Defendants have not identified, and this Court has not located, any job descriptions for its employees or any policies governing employee discipline or termination, supervisors' routine assessment of employees' work performance, or any policies or procedures addressing harassment, discrimination, or retaliation.

## II.

### A.

Plaintiff recently filed an amended version of her original Motion in Limine to limit evidence relating to Michael Kanuszewski and to exclude irrelevant text messages between Plaintiff and Kanuszewski, ECF No. 78. *See* ECF No. 133; *see also* discussion *infra* Section II.C. Accordingly, the original Motion in Limine, ECF No. 78, will be denied as moot.

### B.

Plaintiff filed a motion in limine to exclude the case "clearance rates" of Plaintiff and other APAs, Payroll Control Number (PCN) staffing reports, and excerpted materials from the criminal files of cases involving Troy Wright and Greg Young. *See* ECF No. 79 at PageID.2212. Plaintiff alleges those six pieces of evidence are not relevant and, if so, they should be excluded as unfairly prejudicial because she would otherwise be "ambushed at trial." *See id.* at PageID.2213.

According to Defendants, all that evidence is relevant. The clearance rates, they contend,

"reflect the hundreds of cases assigned to Plaintiff and the number of cases Plaintiff resolved through trial and jury trial," which "will reflect Plaintiffs [sic] ample opportunity to gain necessary experience through the trial of Circuit Court matters and her failure to do so." ECF No. 87 at PageID.2573. The PCN reports, Defendants assert, "demonstrate that Plaintiff was not promoted," and that "two other APA's [sic] were also changed without promotion," which "reflect that the practice of reassigning PCNs was used for both male and female APA's [sic]." *Id.* at PageID.2573. Defendants add that the "excerpts from the Troy Wright or Greg Young criminal files. . . . will support Supervisors [sic] testimony regarding the manner and reasons for the assignment of these files and the reason [they were] mistakenly assigned to Plaintiff and reassigned to correct that error." *Id.* at PageID.2574.

Under Federal Rule of Evidence 401, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Unless expressly proscribed by another evidential rule, relevant evidence is admissible. FED. R. EVID. 402; *Frye v. CSX Transp., Inc.*, 933 F. 3d 591, 599 (6th Cir. 2019).

Under Rule 403, a trial "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence." FED. R. EVID. 403. "Much of the Federal Rules of Evidence is devoted to protecting parties from the introduction of unfairly prejudicial evidence." Jesse Schupack, Note, *The Liar's Mark: Character and Forfeiture in Federal Rule of Evidence 609(a)(2)*, 119 MICH. L. REV. 1031, 1035 (2021). But evidence is not excluded as unfairly prejudicial merely because it is damaging to the party against whom it is offered. Rather, "unfair prejudice" under Rule 403, "means an undue tendency to suggest decision

- 9 -

on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citation omitted).

The clearance rates are relevant because they tend to corroborate Defendants' assertion of a nonretaliatory reason for terminating Plaintiff's employment. If the clearance rates demonstrate that Plaintiff did not adequately perform as an advocate, then they increase the likelihood that Defendants terminated her employment for deficient performance.

By contrast, Plaintiff claims the evidence might surprise her at trial due to lack of preparation time to contest them. Indeed, "[t]here should be no surprises at the hearing." William E. Thro, *No Angels in Academe: Ending the Constitutional Deference to Public Higher Education*, 5 BELMONT L. REV. 27, 54 (2018). But, to the extent that this evidence might surprise Plaintiff at trial, which is her only argument, she filed her motion and Defendants explained the nature of these documents more than two years ago and trial is at least six months away. *See* ECF Nos. 87; 138. In this way, there is no risk of prejudice from admitting the clearance rates.

The PCN staffing reports and the excerpts are irrelevant. The PCN staffing reports would only demonstrate whether Plaintiff was promoted without the commensurate pay. But Plaintiffs' pay-related claims have been dismissed. ECF No. 97 at PageID.2878–82, 2889–91. The staffing reports are also not relevant to whether Boyd berated Plaintiff at the August 14, 2018 meeting or to Defendants' motivation for terminating her employment. For the same reasons, the excerpts that Defendants have offered to increase the likelihood that they mistakenly assigned a capital case to Plaintiff and then reassigned the case to another APA to correct the error are irrelevant.

For these reasons, the Motion, ECF No. 79, will be denied in part and granted in part. The clearance rates are admissible, but the PCN staffing reports and the excerpts of Wright and Young are inadmissible.

## C.

Plaintiff filed a motion in limine to exclude a series of text messages between her and her coworker Sharondra Clement as "hearsay, irrelevant, prejudicial, and impermissible character evidence." ECF No. 80 at PageID.2239. This Motion substantially overlaps with a motion that Plaintiff later filed to exclude (1) text messages between her and Michael Kanuszewski, (2) Kanuszewski's lawsuit against Defendants, and (3) a letter that Kanuszewski sent to the state judge after the judge dismissed his case. *See* ECF No. 133. Defendants assert that the text messages demonstrate that Defendants terminated Plaintiff's employment because she was disloyal, did not follow directives, and bullied and alienated her coworkers. *See* ECF No. 86 at PageID.2523–24.

All but two of the text messages are irrelevant and unfairly prejudicial. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. By their date, the text messages were unknown to Defendants until after Plaintiff's employment was terminated. Thus, they are not relevant to Defendants' decision to terminate Plaintiff's employment. And to the extent that they might be relevant, they run the risk of confusing the issues to the members of the jury, who must focus on the treatment of Plaintiff during the August 14, 2018 meeting and Defendants' rationale for terminating Plaintiff's employment, not the details of nonparty Michael Kanuszewski's lawsuit against Defendants, the termination of his employment, or conversations between Plaintiff and her coworkers that were not known to Defendants until after they terminated her employment. The same is true regarding the details of Kanuszewski's suit against Defendants and the letter that he later sent to a state judge.

For these reasons—except (1) the June 28, 2018 text message that Plaintiff sent to Michael Kanuszewski about Boyd investigating Kanuszewski's desk and (2) the August 29, 2018 text message depicting Plaintiff's state of mind when she was terminated—all the text messages

between Plaintiff and Michael Kanuszewski and the text messages between Plaintiff and Sharondra Clement will be excluded from evidence. *See* FED. R. EVID. 403.

Accordingly, the Motion in Limine to Exclude Texts Between Plaintiff and Sharondra Clement, ECF No. 80, will be granted, and the Amended Motion in Limine to Limit Evidence Relating to Michael Kanuszewski and Excluding Irrelevant Text Messages Between Plaintiff and Kanuszewski, ECF No. 133, will be granted in part and denied in part.

**D.**

Plaintiff filed a motion in limine to exclude seven pieces of evidence. ECF No. 81. The Motion will be granted in part and denied in part as follows:

> (1) Defendants *may* argue that Plaintiff failed to mitigate her damages;
> (2) Defendants *may not* introduce evidence that Plaintiff applied for and drew unemployment benefits;
> (3) Defendants *may* introduce evidence of Plaintiff's résumé and its purported enhancements;
> (4) Defendants *may not* introduce evidence of APA promotions *after* the termination of Plaintiff's employment, the Hoover personnel status change form, or other similar status-change forms documenting post-termination pay raises or promotions;
> (5) Defendants *may not* introduce evidence of Plaintiff's traffic convictions.
> (6) Defendants *may not* introduce evidence of Plaintiff's prior sexual relationships or infidelity; and
> (7) the parties will be directed to submit supplemental briefing as to the admissibility of the May 10, 2019 email that APA Jolina O'Berry sent to Defendant McColgan.

**i.**

Plaintiff seeks to exclude "evidence or argument that Plaintiff failed to mitigate her damages . . . because there is no evidence to support this defense." ECF No. 81 at PageID.2274. According to Plaintiff, she applied to be a prosecutor in Genesee County nine days after Defendants terminated her employment, and she began the position approximately two months later. ECF No. 81 at PageID.2280.

When a plaintiff has presented evidence of damages, the defendant "has the burden of establishing a failure to properly mitigate damages." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir. 1994) (citing *Rasimas v Mich. Dep't of Mental Health*, 714 F.2d 614, 623–24 (6th Cir. 1983)). To establish Plaintiff's failure to mitigate damages, Defendants must demonstrate that (1) substantially equivalent positions were available, and (2) that Plaintiff failed to exercise reasonable care and diligence in seeking those positions. *Id.* at 624. Whether Plaintiff properly mitigated her damages by obtaining employment with the Genesee County Prosecutor's Office or was required to mitigate further damages after obtaining that position are questions for the jury. Evidence of Plaintiff's failure to mitigate her damages is relevant to that end.

For these reasons, Defendants will not be barred from arguing that Plaintiff failed to mitigate her damages.

## ii.

Plaintiff seeks to exclude "evidence that Plaintiff applied for and drew unemployment benefits . . . because admission would violate the collateral source rule." ECF No. 81 at PageID.2274. Defendants respond that they "do not intend to introduce evidence regarding Plaintiff's unemployment benefits." ECF No. 89 at PageID.2661. Consequently, Plaintiff's Motion will be granted to exclude evidence that she applied for and received unemployment benefits.

## iii.

Plaintiff contends that "evidence or argument of alleged résumé fraud should be excluded because there is no evidence to support this defense and it would be unfairly prejudicial." ECF No. 81 at PageID.2274.

That evidence is relevant. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. As Defendants acknowledge, they did not learn that Plaintiff's

résumé "contains artificial enhancements" until after they terminated her employment: "[d]uring her deposition." *See* ECF No. 89 at PageID.2661–62. Whether Plaintiff embellished her résumé, then, seemingly has no bearing on whether Defendants terminated Plaintiff's employment. Yet that evidence is relevant to Plaintiff's available remedies under the "after-acquired evidence" doctrine, which provides that "[w]he[n] an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996) (citing *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360–62 (1995)). Thus, evidence of Plaintiff's résumé fraud is relevant to her available remedies.

The risk of unfair prejudice in allowing the jury to hear evidence of Plaintiff's purported résumé fraud would not substantially outweigh its unique probative value. Admitting the résumé's enhancements might risk the jury absolving Defendants of liability due to the possibility that Plaintiff was not qualified for the position when she was hired. But that is a key issue to Plaintiff's remedies under controlling precedent and, thus, must be considered. Moreover, according to Plaintiff, Defendant's evidence of résumé fraud is merely "an error in one resume where she identified having done trial clinic work while in school in Wayne and Macomb, instead of Oakland and Macomb." ECF No. 81 at PageID.2284. And Plaintiff has provided her intended argument in defense, which likely would mitigate any remaining prejudicial effect. *Id.* ("Plaintiff explained that there would be various versions of her resume which she tailors to address particular job searches; Plaintiff was not sure if she had used the same resume for each application to Saginaw County.").

For these reasons, Defendants may introduce evidence of Plaintiff's résumé and its

purported "enhancements."

<strong>iv.</strong>

Plaintiff also seeks to exclude "evidence or argument that other [APAs] were promoted after Plaintiff's discharge" as irrelevant, misleading, and unfairly prejudicial. ECF No. 81 at PageID.2274.

That evidence is irrelevant. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. The only issue remaining in this case is whether Defendants terminated Plaintiff's employment either for reporting Boyd's gender discrimination or for some nonretaliatory reason. Thus, whether Defendants promoted similarly situated male APAs is immaterial to Plaintiff's claims and Defendants' defenses. Moreover, any evidence of promotions or raises dated *after* Plaintiff's termination is irrelevant to whether Defendants treated her differently than other APAs *before* terminating her employment. And because that evidence has no probative value, it is substantially outweighed by the risk of confusing the jury about the pertinent issues before it.

Consequently, evidence of any APA promotions dated after Defendants terminated Plaintiff's employment, the Hoover personnel-status change form, and other similar status-change forms documenting post-termination pay raises or promotions will be excluded from trial.

<strong>v.</strong>

Plaintiff contends that "evidence of traffic convictions should be excluded as irrelevant." ECF No. 81 at PageID.2275. Defendants respond that they "do not intend to introduce evidence of Plaintiff's traffic convictions." ECF No. 89 at PageID.2666. Consequently, Plaintiff's Motion will be granted to exclude evidence of her traffic convictions.

<strong>vi.</strong>

- 15 -

Plaintiff contends that "evidence regarding allegations of infidelity allegedly made by Plaintiff's former wife in divorce proceedings and other evidence of Plaintiff's sexual or romantic relationships should be excluded as irrelevant, a waste of time and unduly prejudicial, and improper character evidence." ECF No. 81 at PageID.2274–75.

Defendants claim that evidence of Plaintiff's sexual relationships is probative of her "preexisting emotional and psychological conditions." ECF No. 89 at PageID.2666.

This evidence is marginally relevant at best. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. Plaintiff seeks damages for the "mental and emotional distress" caused by Defendants' termination of her employment. *See* ECF No. 1 at PageID.7. Such damages are recoverable in employment-discrimination cases brought under the ELCRA. *See, e.g.*, *Reisman v. Regents of Wayne State Univ.*, 470 N.W.2d 678, 686 (Mich. Ct. App. 1991) (per curiam). Mental and emotional distress are "an unavoidable part of many divorces," Linda L. Berger, *Lies Between Mommy and Daddy: The Case for Recognizing Spousal Emotional Distress Claims Based on Domestic Deceit That Interferes with Parent-Child Relationships*, 33 LOY. L.A. L. REV. 449, 463 (2000), which is no less true when the divorce stems from infidelity, *Raftery v. Scott*, 756 F.2d 335, 341 (4th Cir. 1985) (Michael, J., concurring) (stating that actions by a spouse "in derogation of the marital relationship will produce an emotional distress in the other spouse" because "it is hard to envision any situation between two parties more likely to create emotional distress than the deterioration of the domestic relationship between a husband and wife"). That distress could therefore be an alternative or contributing cause to her distress and the damages from it.

Yet the risk of unfair prejudice in providing the jury with evidence of Plaintiff's alleged infidelity substantially outweighs its meager probative value. Every person has statistically similar

anger, hurt, and disgust responses to sexual and emotional infidelity. *See generally* D. Vaughn Becker et al., *When the Sexes Need Not Differ: Emotional Responses to the Sexual and Emotional Aspects of Infidelity*, 11 PERS. RELATIONSHIPS 529 (2004). Similarly, people have statistically varying implicit and explicit responses regarding homosexual couples. *See* Emily Cunningham et al., *Induced Disgust Affects Implicit and Explicit Responses Toward Gay Men and Lesbians*, 43 EUR. J. SOC. PSYCH. 362, 362 (2013); *see also* Amanda Balzer & Carly M. Jacobs, *Gender and Physiological Effects in Connecting Disgust to Political Preferences*, 92 SOC. SCI. Q. 1297, 1297 (2011) ("Sensitivity to disgust predicts social attitudes, but this relationship can shift depending on gender and whether [the] response to disgust is measured through surveys or physiological tests."); Stephen Saltzburg, *Understanding the Jury with the Help of Social Science*, 83 MICH. L. REV. 1120, 1136 (1985) (book review) (noting that jurors' voting patterns "do not differ appreciably as a result of their [own] race, sex, ethnicity or background characteristics"). Thus, evidence of Plaintiff's alleged infidelity runs the risks of misleading the jury to vilify Plaintiff not only for her infidelities, but also for her selection of a female marital partner. Each risk substantially outweighs any limited probative value to Plaintiff's mental and emotional distress.

For these reasons, any evidence of Plaintiff's prior sexual relationships or infidelity is inadmissible at trial.

### vii.

Plaintiff contends that "the email of May 10, 2019 written by APA Jolina O'Berry and sent to McColgan should be excluded as inadmissible hearsay within hearsay." ECF No. 81 at PageID.2274.

Defendants "admit that the email has no other purpose or evidentiary value" other than "eliciting testimony from O'Berry regarding Plaintiff's bullying and demeaning conduct." ECF

No. 89 at PageID.2664.

Hearsay is an out-of-court statement repeated in court to prove the truth of the matter asserted therein and is inadmissible with some exceptions. *See* FED. R. EVID. 801(c) and 802. The rule against hearsay does not apply to statements offered merely to show that they were made or that had some effect on the listener. *See United States v. Gibson*, 675 F.2d 825, 833–34 (6th Cir. 1982). Evidence offered to elicit corroborating testimony that "goes 'to the very heart of [Defendants'] case'" might still be inadmissible hearsay. *See United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir. 1990) (quoting *Stewart v. Cowan*, 528 F.2d 79, 86 & n.4 (6th Cir. 1976)).

Beyond their barebones conclusions, the parties do not analyze the admissibility of the emails under any Rule of Evidence. In this way, questions linger as to whether the May 10, 2019 email is authentic, satisfies any exception to the rule against hearsay, or is hearsay at all. Questions also persist as to whether the statements to which the email refers are hearsay or satisfy any exception to the rule against hearsay. *See* FED. R. EVID. 805.

Consequently, the Motion will be denied without prejudice as to the May 10, 2019 email from APA Jolina O'Berry to McColgan, and the parties will be directed to submit supplemental briefing on its admissibility.

## E.

Defendants filed a motion in limine to strike and preclude the testimony of Dr. Yvonne Makidon, Plaintiff's treating physician. ECF No. 82. According to Defendants, Plaintiff refused to disclose her treatment records with Dr. Makidon and, therefore, cannot rely on those records or present the treating physician as a witness at trial. *Id.* at PageID.2379–80. Defendants add that Dr. Makidon may not testify because Plaintiff has not provided a written report or a summary of facts and opinions for Dr. Makidon under Rule 26. *Id.* at PageID.2382.

Plaintiff responds that she is not calling Dr. Makidon to testify as an expert witness but "as a lay witness who is Plaintiff's medical provider." ECF No. 90 at PageID.2753. Plaintiff adds that she timely disclosed her intent to call Dr. Makidon in her initial disclosures. *Id.*

### i.

Dr. Yvonne Makidon will not be precluded from testifying at trial. Dr. Makidon is Plaintiff's treating physician. Plaintiff did not retain Dr. Makidon in anticipation of litigation and, therefore, she did not need to disclose written reports for her. *See* FED. R. CIV. P. (a)(2)(B); *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 452 (E.D. Mich. 2017) (noting that "experts who are not retained or specially employed to provide expert testimony" must comply with Rule 26(a)(2)(C)). Thus, Plaintiff instead had to follow Rule 26(a)(2)(C). Although Plaintiff did not properly disclose "the subject matter" or "a summary of the facts and opinions" to which Dr. Makidon will testify, *see* FED. R. EVID. 26(a)(2)(C), that failure is not prejudicial because Defendants have become amply aware of the subject, facts, and opinions to which Dr. Makidon would testify. *See* ECF Nos. 82; 90; 94. Because Plaintiff properly disclosed Dr. Yvonne Makidon, she may testify at trial.

For these reasons, the Motion, ECF No. 82, will be denied.

### ii.

Yet parties waive any privilege to a treating physician's medical records when seeking damages for emotional distress. *Maday v. Pub. Librs. of Saginaw*, 480 F.3d 815, 821 n.2 (6th Cir. 2007) (citing *Hyde v. Univ. of Mich. Regents*, 575 N.W.2d 36, 42 (Mich. Ct. App. 1997)). Although the parties disagree on who to blame for Defendants' failure to obtain Plaintiff's medical records as they relate to Dr. Makidon, the issue is easily remedied.

Accordingly, Plaintiff will be directed to disclose Dr. Makidon's treatment records of Plaintiff during the relevant period. *See* FED. R. EVID. 26(e)(1)(B).

**F.**

Defendants filed a motion in limine to exclude unfounded allegations of gender discrimination. ECF No. 83. The Motion seeks to exclude three types of evidence. The Motion will be denied in full because all the contested evidence is admissible.

**i.**

Defendants seek to exclude Boyd's comments at the August 14, 2018 meeting. ECF No. 83 at PageID.2437–39. Defendants assert that Boyd's comments at the August 14, 2018 meeting are not relevant and, if so, are unfairly prejudicial. *See id.* at PageID.2437. Alternatively, Defendant seeks to exclude Plaintiff's interpretation of Boyd's comments for the same reasons. *See id.* at PageID.2439.

Plaintiff's only remaining claim is that Defendants terminated her employment because she spoke against what she perceived to be gender discrimination. *See* discussion *supra* Section I.B. Among her allegations of gender discrimination are the comments that Boyd made at the August 14, 2018 meeting. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. The mere existence of those comments makes it more likely that Defendants terminated Plaintiff's employment for contesting the comments or behavior, which were also the basis of Plaintiff's intra-office gender-discrimination complaints. In this way, the probative value of testimony about Boyd's comments is very high and not outweighed by any purported prejudicial value. And to the extent that Defendants seek to exclude Plaintiff's interpretation of those comments, such testimony is admissible to demonstrate the effect that Boyd's statements had on Plaintiff and her motive for reporting his comments and conduct to HR and McColgan.

If Plaintiff establishes a proper foundation for Boyd's comments, then they are admissible at trial. Notably, Plaintiff may be cross-examined of course. Consequently, Defendant's Motion will be denied as to Boyd's comments at the August 14, 2018 meeting.

**ii.**

Defendants seek to exclude Plaintiff's interpretation of John McColgan's conduct. ECF No. 83 at PageID.2440–41. Specifically, Defendants assert that there is no relevance to Plaintiff's expected testimony that "prior to her termination she was not previously disciplined; that Mr. McColgan did not convey the reason for her discharge at the time of discharge; [and] that Plaintiff was paid a severance." *See* ECF No. 83 at PageID.2440.

This evidence is relevant. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. The lack of prior discipline increases the likelihood that Defendants terminated Plaintiff's employment because she opposed Defendants' gender discrimination, as does a lack of stated reason for termination at the time of termination and the paying of a severance. Defendants do not address the potential of unfair prejudice.

For these reasons, Plaintiff may testify that "prior to her termination she was not previously disciplined; that Mr. McColgan did not convey the reason for her discharge at the time of discharge; [and] that Plaintiff was paid a severance." *See* ECF No. 83 at PageID.2440. Again, however, Plaintiff may and likely will be cross-examined in this regard. Defendants' Motion will be denied as to this testimony.

**iii.**

Defendants seek to exclude evidence that Plaintiff received less desirable job assignments. ECF No. 83 at PageID.2441–43. Specifically, Defendants assert that such evidence is not an

adverse employment action. Defendants add a litany of alternative reasons for Plaintiff's less desirable job assignments. Plaintiff contends the evidence is relevant. ECF No. 92 at PageID.2825.

This evidence is conditionally relevant. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B.

Plaintiff's remaining claim is that Defendants terminated her employment for reporting Boyd's gender discrimination to HR and McColgan. Boyd was Plaintiff's supervisor. So, if Boyd was assigning less desirable job assignments to Plaintiff than he was assigning to similarly situated males, then it is more likely not only that Boyd berated Plaintiff at the August 14, 2018 meeting because of her gender, but also that Plaintiff's complaint to HR and McColgan was based on a good-faith belief that Boyd was discriminating against people based on gender. In this way, Plaintiff's purported less desirable job assignments advance the argument that Defendants terminated her employment because she opposed Defendants' gender discrimination, as she claims. Defendants do not address the potential for unfair prejudice.

For these reasons, Plaintiff may testify that Defendants assigned her less desirable job assignments than similarly situated male employees. Consequently, Defendants' Motion, ECF No. 83, will be denied.

## G.

Defendants filed a motion in limine to exclude testimony that Jennifer Janetsky gave in prior litigation. ECF No. 84. Defendants note that Ms. Janetsky voluntarily resigned and sued Defendants based on "a verbal confrontation with Boyd which occurred June 1, 2015 in [his] office." *Id.* at PageID.2481. During that confrontation, Boyd allegedly "raised his voice" at Ms. Janetsky for which she sued him. *Id.* at PageID.2482.

Defendants provide three theories for the inadmissibility of Ms. Janetsky's testimony: it is (1) irrelevant; (2) unfairly prejudicial; and (3) a prior bad act. *Id.* at PageID.2482–88.

### i.

Janet Janetsky's testimony about Boyd's gender-related comments is relevant. The standard for relevance is the same as stated above. *See* discussion *supra* Section II.B. Even if only under Plaintiff's subjective interpretation, any of Boyd's prior gender-biased comments or conduct would increase the likelihood that Plaintiff opposed Defendants' gender discrimination, and that Defendants therefore terminated Plaintiff's employment. Further, as Plaintiff contends, Defendants' conduct toward Ms. Janetsky "is relevant to show Defendants' motive and intent" for terminating Plaintiff's employment. ECF No. 91 at PageID.2796; *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) ("The question whether evidence of discrimination by other supervisors is relevant [under Rule 401] in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."); *see also Meeks v. Autozone, Inc.*, 235 Cal. Rptr. 3d 161, 175 (Cal. Ct. App. 2018) ("California courts have held . . . evidence of gender bias against employees other than the plaintiff, may be admissible evidence in discrimination and harassment cases.").

### ii.

The risk of prejudice from Ms. Janetsky's testimony does not substantially outweigh its probative value. Although some prior litigation might be unfairly prejudicial, *see, e.g.*, *Ross v. Am. Red Cross*, 567 F. App'x 296, 307–08 (6th Cir. 2014) (unpublished), this prior litigation is not. As Defendants repeatedly acknowledge, "Ms. Janetsky's allegations have been dismissed by the Michigan Court of Appeals." ECF No. 84 at PageID.2487. Her testimony about Boyd's conduct seems as likely to aid Defendants as it is to prejudice them. Yet her claims were not dismissed for

lack of merit as to whether Boyd raised his voice at her because she is a woman; they were dismissed because she "failed to establish a genuine issue of fact as to whether she engaged in a protected activity as defined by the Whistleblower Protection Act." ECF No. 84 at PageID.2481. Moreover, Defendants do not demonstrate any unreliability in the Michigan trial court's findings that Boyd engaged in the conduct that Ms. Janetsky alleged. So any risk of unfair prejudice would not outweigh the probative value of Ms. Janetsky's testimony. Accordingly, any weighing of Ms. Janetsky's credibility is for the trier of fact.

### iii.

Janet Janetsky's testimony is not an inadmissible prior bad act. Her testimony is admissible to prove that Defendants had a gender bias, which Plaintiff argues was the purported motivation for the termination of her employment. Numerous scientific studies demonstrate that gender bias and prejudice are habit behavior. *See, e.g.*, Jody Armour, *Stereotypes and Prejudice: Helping Legal Decisionmakers Break the Prejudice Habit*, 83 CAL. L. REV. 733, 738 (1995) (considering "the potential for legal decisionmakers to control (at least temporarily) the discrimination habit by activating their nonprejudiced—or at least egalitarian—personal beliefs"); Molly Carnes et al., *Effect of an Intervention to Break the Gender Bias Habit for Faculty at One Institution: A Cluster Randomized, Controlled Trial*, 90 ACAD. MED. 221, 222 (2015) (concluding that "[a]n intervention that facilitates intentional behavioral change can help . . . break the gender bias habit"). Indeed, at least one legal scholar has explained how "comparing the perpetrator's treatment of members of one sex with his or her treatment of members of the other sex" can be "evidence of habit" in discrimination cases and is more easily admissible in sexual-harassment cases. *See* Martin J. Katz, *Reconsidering Attraction in Sexual Harassment*, 79 IND. L.J. 101, 108–10 (2004). In this way, Janet Janetsky's testimony about Defendants' gender bias is admissible. FED. R. EVID. 406.

Even so, Plaintiff contends that she is offering Ms. Janetsky's testimony to prove Boyd's and McColgan's motive and intent. *See* ECF No. 91 at PageID.2796. Evidence of "other acts" is relevant in employment-discrimination cases. *See, e.g.*, *Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012) ("'Other acts' evidence can provide probative context to an individual employment decision, especially when, as here, the circumstances of that decision are already somewhat suspicious due to evidence of pretext that was sufficient to survive summary judgment.").

Six factors guide the other-acts analysis:

(1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff;
(2) whether the same "bad actors" were involved in the "other" conduct and in the challenged conduct;
(3) whether the other acts and the challenged conduct were in close temporal and geographic proximity;
(4) whether decisionmakers within the organization knew of the decisions of others;
(5) whether the other affected employees and the plaintiff were similarly situated; and
(6) the nature of the employees' allegations.

*Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 445 (6th Cir. 2014) (unpublished).

The six factors weigh in favor of admissibility. Plaintiff contends that Defendants terminated her employment for opposing gender discrimination, and Ms. Janetsky will testify that the same Defendants subjected her to gender discrimination. In this way, Ms. Janetsky's testimony is logically and reasonably tied to the termination of Plaintiff's employment. And the same actors were involved in both situations, as McColgan was aware of Boyd's conduct. Plaintiff and Ms. Janetsky were similarly situated, as they both worked for Boyd and McColgan, both complained to McColgan about Boyd's conduct, and Defendants terminated the employment of Plaintiff and Ms. Janesky. As indicated, the nature of Plaintiff's and Ms. Janetsky's allegations are substantially similar. But the incidents occurred at "different times." *See* ECF No. 91 at PageID.2798. With

only one factor weighing against admissibility and five weighing in favor, Ms. Janetsky's testimony is admissible at trial.

For these reasons, Defendants' Motion, ECF No. 84, will be denied.

## H.

Plaintiff filed a motion to strike Defendants' pretrial-conference submissions. ECF No. 115. Specifically, Plaintiff seeks to exclude evidence that Defendants submitted at a pretrial conference demonstrating their intent to reframe her case as opposing sexual harassment rather than gender discrimination. *See id.* at PageID.3182 ("Defendants' submissions attempt to transform the claim before this Court from a retaliation claim based on Plaintiff's opposition to gender discrimination, into a retaliation claim based on Plaintiff's supposed opposition to sexual harassment."). Defendants' transformation takes the form of a statement of defenses, jury verdict form, closing arguments, *voire dire* questions, and four modified jury instructions purportedly geared toward placing a burden on Plaintiff to prove that she opposed "sex harassment." *See* ECF No. 155 at PageID.3183–84.

Defendants assert that their framing is appropriate because the ELCRA "prohibits an employer from retaliated [sic] against a person 'because the person has opposed a violation of the Act.'" ECF No. 118 at PageID.3281 (quoting MICH. COMP. LAWS § 37.2701). Defendants add that opposing gender discrimination is not considered a violation of the ELCRA. *See id.* at PageID.3283. To succeed on her ELCRA claim, Defendants conclude, Plaintiff must prove that she opposed "sex discrimination." *Id.*

Defendants may not frame Plaintiff's case as opposing sexual harassment; they must address it as opposing gender discrimination. *See* FED. R. EVID. 12(f) (allowing courts to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

Gender discrimination is sex discrimination. *Redmon v. Yorozu Auto. Tenn., Inc.*, 834 F. App'x 234, 235 (6th Cir. 2021) (unpublished) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020))). As a corollary, sex discrimination is gender discrimination. *See Vredevelt v. GEO Grp., Inc.*, 145 F. App'x 122, 136 (6th Cir. 2005) (unpublished) (Clay, J., concurring in part and dissenting in part) (noting that a "sexist comment constitutes direct evidence of gender discrimination because it suggests that [person's] sex played a role in [the employer's] decision to remove her.").

Indeed, the Michigan Supreme Court has long opined and recently held that the ELCRA prevents gender discrimination. *Rouch World, LLC v. Dep't of C.R.*, No. 162482, 2022 WL 3007805, at *4 (Mich. July 28, 2022) (holding that "the prohibition of discrimination in places of public accommodation 'because of . . . sex' includes a prohibition of discrimination on the basis of sexual orientation and gender identity" (quoting in MICH. COMP. LAWS § 37.2302(a))); *see also Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 866 (Mich. 2005) (Weaver, J., concurring in part and dissenting in part) (stating that the ELCRA's prohibition on "other verbal or physical conduct or communication of a sexual nature" prohibits gender discrimination). Defendants can make the same simple adjustments to their statement of defenses, jury verdict form, closing arguments, voire dire questions, and jury instructions.

Accordingly, Plaintiff's Motion, ECF No. 115, will be granted.

## J.

Defendants filed a motion to strike any mention of Plaintiff's visit to human resources from her statement of claims. ECF No. 117. Defendants assert that under Federal Rule of Civil Procedure 12(f), this Court should exercise its "liberal discretion" to strike the HR visit because it

has "no bearing on the subject matter of the litigation." *Id.* at PageID.3204–05 (citations omitted). Defendants add that the HR visit is irrelevant and unfairly prejudicial. *See id.* at PageID.3205–09. But this Motion rests on a démodé understanding of the relationship between gender and sex. *See* discussion *supra* Section II.H.

Part of Plaintiff's case requires her to prove by a preponderance of the evidence that Defendants had "reasonable notice" of her report to HR about Boyd's allegedly sexist behavior. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 489 (6th Cir. 2006) (citations omitted); *see also Hussain v. Highgate Hotels, Inc.*, 126 F. App'x 256, 269 (6th Cir. 2005) (unpublished) (requiring "adequate notice"). Such notice hinges on a *respondeat superior* theory of liability. *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915 (Mich. 2000) ("[I]t is always necessary to determine the extent of the employer's vicarious liability when harassment is committed by an agent."). Plaintiff's visit to HR is important to that inquiry, as it increases not only the likelihood that Defendants had notice of the purported hostile work environment that Boyd created for women, but also that Plaintiff reported that environment to HR and then to McColgan. The HR visit is therefore relevant to Plaintiff's ELCRA claim and Defendants' defenses to it. For the same reasons, Rule 12(f) does not warrant striking the HR visit.

The risk of unfair prejudice of the HR visit does not substantially outweigh its unique probative value. Plaintiff alleges she reported Boyd's gender discrimination to two HR employees and to McColgan, which is how she opposed a violation of the ELCRA. Those complaints would not confuse the jury. There is a question of fact as to whether McColgan knew of Plaintiff's discussions with HR, as Plaintiff testified that she told McColgan what she disclosed to HR. ECF No. 121-3 at PageID.3383–84. And there is a factual question regarding whether Plaintiff's informal complaint to HR constitutes a complaint under the ELCRA. The same is true of her

complaint to McColgan. Such questions are for the trier of fact, not reasons to strike evidence. Moreover, Saginaw County is a Defendant and co-employer, so its (lack of) action in response to Plaintiff's gender-discrimination complaint is relevant to Plaintiff's retaliation claim. Because Plaintiff's complaint to HR is relevant and nonprejudicial, it will not be excluded from her statement of claims.

Consequently, Defendants' Motion, ECF No. 117, will be denied.

### K.

Plaintiff filed a motion to seal under Local Rule 5.3. ECF No. 131. Specifically, Plaintiff's Motion to Seal requests that this Court grant leave for Plaintiff to file under seal a letter that Michael Kanuszewski sent to a Michigan judge. According to Plaintiff, that communication is relevant to her Amended Motion in Limine, ECF No. 133. Yet Plaintiff has already filed the document under seal. *See* ECF No. 132 (filed under seal). To entertain Plaintiff's Motion on its full merits and because Plaintiff properly filed the document under Local Rule 5.3, the Motion to Seal, ECF No. 131, will be granted.

### III.

Accordingly, it is **ORDERED** that Plaintiff's Motion in Limine to Limit Evidence Relating to Michael Kanuszewski and Excluding Irrelevant Text Messages Between Plaintiff and Kanuszewski, ECF No. 78, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Plaintiff's Motion in Limine to Exclude PCN Staffing Report, Clark Clearance Rate, Saginaw APA Clearance Rate, Docket Sheets, and Excerpted Materials from Wright and Young, ECF No. 79, is **GRANTED IN PART** and **DENIED IN PART**. The Clark clearance rate and Saginaw APA clearance rate are admissible. The PCN staffing report and excerpted materials from Wright and Young are inadmissible.

Further, it is **ORDERED** that Plaintiff's Motion in Limine to Exclude Texts Between Plaintiff and Sharondra Clement, ECF No. 80, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's Amended Motion in Limine to Limit Evidence Relating to Michael Kanuszewski and Excluding Irrelevant Text Messages Between Plaintiff and Kanuszewski, ECF No. 133, is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **DENIED** to the extent that it seeks to exclude the June 28, 2018 text message that Plaintiff sent to Michael Kanuszewski about Defendant Boyd searching Kanuszewski's desk and the August 29, 2018 text message depicting Plaintiff's state of mind when she was terminated. The Motion is **GRANTED** in all other regards.

Further, it is **ORDERED** that Plaintiff's Motion in Limine, ECF No. 81, is **GRANTED IN PART** and **DENIED IN PART**. The Motion is denied to the extent that is seeks to exclude evidence that Plaintiff failed to mitigate her damages, to the extent that it seeks to exclude evidence of Plaintiff's résumé and its purported enhancements, and to the extent that it seeks to exclude the May 10, 2019 email that APA Jolina O'Berry sent to Defendant McColgan; it is granted in all other regards.

Further, it is **ORDERED** that Defendants' Motion in Limine to Strike and Preclude Testimony of Dr. Yvonne Makidon (Clinical Social Worker), ECF No. 82, is **DENIED**.

Further, it is **ORDERED** that Defendants' Motion in Limine Regarding Unfounded Gender Discrimination Allegations, ECF No. 83, is **DENIED**.

Further, it is **ORDERED** that Defendants' Motion in Limine Regarding Prior Litigation, ECF No. 84, is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion to Strike Defendants' Pretrial Conference Submissions, ECF No. 115, is **GRANTED**. Defendants may not frame Plaintiff's case as opposing sexual harassment; they must address it as opposing gender discrimination.

Further, it is **ORDERED** that Defendants' Motion to Strike Discussion of HR Visit from Plaintiff's Statement of Claims, ECF No. 117, is **DENIED**.

Further, it is **ORDERED** that Plaintiff's Motion to Seal, ECF No. 131, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff is **DIRECTED** to disclose her treatment records with Dr. Makidon during the relevant period to Defendants **on or before September 12, 2022**. *See* Fed. R. Evid. 26(e)(1)(B).

Further, it is **ORDERED** that the parties are **DIRECTED** to submit supplemental briefing to address the admissibility of the May 10, 2019 email that APA Jolina O'Berry sent to Defendant McColgan—including, at a minimum, whether the email is authentic, satisfies any exception to the rule against hearsay, or is hearsay at all, as well as whether the statements to which the email refers are hearsay or satisfy any exception to the rule against hearsay. Plaintiff's brief is due **on or before September 12, 2022**. Defendant's response is due **September 19, 2022**.

**This is not a final order and does not close the case**.

Dated: August 26, 2022

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge